UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                      Case No. 08-20474

ERNEST ADAM CSOLKOVITS,        Honorable Julian Abele Cook, Jr.

        Defendant.

ORDER

On September 16, 2008, a grand jury returned an indictment which charged the Defendant, Ernest Adam Csolkovits, with having violated a variety of federal criminal statutes; namely, committing wire fraud, utilizing a monetary transaction in a criminally derived property, impeding the laws relating to the administration of Internal Revenue Service, and using false documents, all in violation of 18 U.S.C. § 1343, 18 U.S.C. § 1957(a), 26 U.S.C. § 7212(a), and 18 U.S.C. § 1001, respectively. On October 29, 2008, the Government filed a motion for entry of an order that would authorize the taking of depositions of witnesses in a foreign country to preserve their testimony. Csolkovits opposes the Government's motion.[1]

I.

According to the Government, Csolkovits established a foreign corporation, WHIC

---

[1] In an opposition brief, Csolkovits failed to provide the Court with his version of the facts that are pertinent to a resolution of this motion. Therefore, the text within this section is based upon (1) the wording in the indictment and (2) the language from Government's motion.

International, Inc., and, thereafter, used it to avoid tax liabilities and defraud investors.  It is the Government's contention that Csolkovits made false statements during a tax audit, during which he proffered fraudulent documents to an Internal Revenue Service agent in an attempt to demonstrate that (1) WHIC International is a foreign corporation and (2) another United States-based corporation (to wit, WHIC-USA, Inc.,) is merely the American distributor of WHIC International's health products.

Furthermore, the Government submits that Csolkovits provided the Internal Revenue Service agent with a purported exclusive licensing agreement which (1) bore the signature of a Michael Sperry, and (2) facially authorized Csolkovits to distribute the products of WHIC International throughout the United States.  According to the Government, Csolkovits also informed the Internal Revenue Service agent that he, acting on the basis of this licensing agreement, transmitted thousands of dollars in royalties to Sperry and William Saunders, both of whom were identified by him as representatives of WHIC International.  However, the Government contends that this licensing agreement, as well as other documents that were proffered by Csolkovits, are false and were given by him to the Internal Revenue Service agent in an attempt to conceal a planned scheme of deception to avoid his payment of a legitimate federal tax obligation.

In its effort to gather evidence for this case, the Government hopes to obtain the deposition testimony of three alleged representatives of WHIC International; namely, Charles MacKay, William Saunders, and John Sperry.  The Government submits that MacKay and Saunders have already provided unsworn statements to Bahamian authorities, which contain information which is vital to a successful prosecution of Csolkovits. Furthermore, the Government asserts that records from MacKay's law firm indicate that Sperry was not named as the president of WHIC

International until 2001, thereby making (1) the licensing agreement, which had been purportedly executed by him in 1996, suspect and (2) his testimony "highly material to the case." However, the Government complains that all of them (1) currently reside outside of the United States, (2) have refused to travel to testify at trial, or (3) have presented the Government with difficult-to-satisfy conditions for traveling.[2]

II.

The Government, in pointing out that it has made unsuccessful efforts in the past to secure the sworn statements of these three men, asserts that two of them are Bahamian nationals who continue to reside in the Bahamas, whereas the third person is an English citizen who now lives in Canada. Thus, the Government urges the Court to grant its motion because (1) the facts herein incorporate exceptional circumstances and (2) the relief that it seeks to obtain is "in the interest of justice."

Csolkovits, in his response, disagrees. He initially contends that the Government's request - at best - is premature. Moreover, it has been argued by him that this is a complex case in which he has neither received a sufficient amount of necessary discovery nor been afforded enough time to prepare for these proposed depositions. Furthermore, he opines that the Bahamian authorities will doubtlessly not honor the Government's request to take the depositions of two of its citizens because this criminal litigation involves an effort to prosecute him for an alleged tax offense which is not covered in the covenant (i.e., Mutual Assistance in Criminal Matters ("Treaty")) between the

---

[2]The Government has averred that (1) McKay agreed to travel only if "he would be compensated for his loss of business, if first class travel was provided, and if the trial didn't conflict with any of his court dates," (2) Saunders has steadfastly refused to travel to testify at a trial in this case, and (3) Sperry has been unresponsive to the Government's request for cooperation.

3

governments of the United States and the Bahamas.

>Rule 15(a) and (f) of the Federal Rules of Criminal Procedure provide, in part:

>(a) When taken . . .  A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data . . . .

>. . .

>(f) Use as Evidence.  A party may use all or part of a deposition as provided by the Federal Rules of Evidence.

The purpose of depositions in criminal cases, as opposed to civil cases, is to "'preserve evidence, not to afford discovery.'" *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993) (quoting *Simon v. United States*, 644 F.2d 490, 498 n.12 (5th Cir. 1981)).  Depositions in criminal cases are generally disfavored, especially those taken in foreign jurisdictions, "because of the absence of procedural protections afforded parties in the United States."  *Id.* (citations omitted).

Nevertheless, Fed. R. Crim. P. 15 authorizes depositions in criminal cases to be taken in order to preserve evidence for subsequent use at trial "when doing so is necessary to achieve justice and may be done consistent with the defendant's constitutional rights." *Id.*  The moving party must demonstrate that there are exceptional circumstances that warrant the taking of depositions. *United States v. Fuentes-Galindo*, 929 F.2d 1507, 1510 (10th Cir. 1991).  The determination of whether depositions will be authorized falls within the discretion of the trial court. *Drogoul*, 1 F.3d at 1552.

The Sixth Circuit Court of Appeals has authorized the taking of deposition in criminal cases in a variety of situations, each of which was determined by the court to be an exceptional circumstance.  *See, e.g., United States v. Sturman*, 951 F.2d 1466, 1480-81 (6th Cir. 1991) (upholding trial court's admission of depositions of Swedish nationals); *United States v. Johnson*,

752 F.2d 206, 210 (6th Cir. 1985) ("exceptional circumstances" requirement of Rule 15 met where witness refused to testify out of fear and the Government was faced with double jeopardy concerns); *United States v. Campbell*, 845 F.2d 1374, 1378 (6th Cir. 1988) (district court did not abuse its discretion by finding exceptional circumstances where proposed witness was elderly and physically infirm).

### III.

Here, the Court finds it significant that Csolkovits's opposition brief does not refute the claims by the Government that this case contains an "exceptional circumstance" which warrants the authorization of deposition testimony by the Court. Notably, Csolkovits' only argument in opposition to the Government's motion is that its request to depose these three men is premature. However, inasmuch as (1) Csolkovits' response was filed nearly five months ago (November 11, 2008), and (2) the Government claims to have provided him with additional discovery material, including the transcript of the interviews that were conducted by the Bahamian authorities on November 21, 2008, his above-referenced defensive posture is now unpersuasive.

Moreover, Csolkovits' argument (to wit, the Bahamian authorities would not allow the Government to obtain the requested depositions) is beyond the scope of the assessment that the Court must make here for, at least, two reasons. First, the Government has correctly noted that this case does not involve the calculation or the imposition of taxes, inasmuch as the Internal Revenue Service has already completed its tasks in both areas. Rather, the Government seeks to prosecute Csolkovits for his alleged falsification of documents and submission of false statements that were

5

given to an Internal Revenue Service agent. These claims appear to be covered by the Treaty.[3] Secondly, the Court declines to speculate as to whether the Bahamian government authorities will grant the Government's request to conduct depositions.

IV.

Therefore, inasmuch as (1) the Government has shown in its motion that exceptional circumstances exist and it is in the interest of justice to permit the procurement of deposition testimony, (2) the allegation by Csolkovits that he has not had a sufficient amount of time to digest the discovery material has become less compelling with the passage of time, and (3) the issue of whether the Government will be allowed by the Bahamian authorities to conduct the depositions of two of its citizens is not a matter that can be, or should be, resolved by this Court, the Government's motion must be, and is, granted.

Accordingly, the Court will grant the Government's motion for entry of an order that will permit depositions of the three designated witnesses in a foreign jurisdiction.

IT IS SO ORDERED.


Dated:  April 29, 2009                              s/Julian Abele Cook, Jr.
        Detroit, Michigan                           JULIAN ABELE COOK, JR.
                                                    United States District Court Judge

---

[3]The Treaty, in Article 2(1)(iv), also states that assistance may be provided for conduct arising from "fraud or the use of fraud, including conduct which has the effect of defrauding the government, its agencies, or its citizens of the ability to conduct their affairs free from fraud, false statements and deceit."

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 29, 2009.

                                                s/ Kay Doaks
                                                Case Manager