UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        Case No. 08-cr-20474

v.

        Honorable Julian Abele Cook, Jr.

ERNEST ADAM CSOLKOVITS,

        Defendant.

<u>AMENDED ORDER</u>
(Last Sentence Amended)

      In a multi-count indictment that was filed on September 16, 2008, a grand jury charged the Defendant, Ernest Adam Csolkovits, with (1) sixteen counts of wire fraud in violation of 18 U.S.C. § 1343, (2) one count of engaging in a monetary transaction in criminally-derived property in violation of 26 U.S.C. § 1957(a), (3) one count of impeding the administration of the Internal Revenue Service ("IRS") laws in violation of 26 U.S.C. § 7212(a), and (4) one count of submitting false documents to the IRS in violation of 18 U.S.C. § 1001. Currently pending before the Court is Csolkovits' request for the dismissal of certain counts within the indictment, which, in his opinion, are precluded from enforcement due to the expiration of their respective statutes of limitations prior to the filing of the indictment.

I.

      Counts I through VI contain separate counts of wire fraud relating to events that allegedly took place between March 1st and August 2nd of 2001. Count XII recites one count of a claimed

monetary transaction in criminally derived property on or about March 16, 2001.[1] All of these alleged criminal offenses are subject to a five-year statute of limitations under 18 U.S.C. § 3282, which provides that "(e)xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

The parties agree that the United States government and Csolkovits entered into a series of tolling agreements which effectively stopped the running of the limitations periods between April 14, 2008, and September 16, 2008 (the date on which the indictment was filed). The parties also agree that additional tolling occurred pursuant to two applications filed by the United States government for suspensions of the limitations periods under 18 U.S.C. § 3292, which reads, in relevant part, as follows:

> (a) (1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.
> . . .
>
> (b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.
>
> (c) The total of all periods of suspension under this section with respect to an offense–
>
>     (1) shall not exceed three years . . . .

---

[1] The remaining counts identify criminal offenses that allegedly occurred after November 21, 2001, and are not implicated in the present motion.

> (d) As used in this section, the term "official request" means a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country.

This statute contemplates a two-step process which requires the United States government to (1) make an official request of a foreign government, and (2) apply to the court for an order that will suspend the limitations period(s). Here, the United States government filed two separate applications for suspensions of the limitations periods. Each application related to official requests that had been transmitted to the Bahamian government pursuant to the Treaty on Mutual Assistance in Criminal Matters, U.S.-Bah., June 12-Aug. 18, 1987, S. Treaty Doc. No. 100-17.

The first application - which was filed on March 9, 2006, and granted by the Court on the same day - pertained to an official request that was made on February 9, 2006, wherein the United States government sought to obtain (1) bank records from the Royal Bank of Scotland and Royal Bank of Canada; (2) records from the law firm of MacKay & Moxey; and (3) records from the travel agency of Majestic Holidays, Ltd. According to Csolkovits, the Bahamian government took final action on this request on February 1, 2007.

The second application - which was filed on August 30th and granted on September 4th of 2007 - related to an official request that was first submitted on March 23, 2007, and was followed by supplemental requests on August 24th and November 19th. There is a dispute between the parties as to whether - and, if so, when - the Bahamian government took final action on this request. Csolkovits contends that final action was taken on January 25, 2008, and opines that the limitations periods on six of the counts had expired prior to the date on which the parties reached their tolling agreement on April 14, 2008. The United States government disagrees, contending that the Bahamian government has never taken final action on this request. Thus, according to the

3

United States government, the three-year maximum tolling period, as found in § 3292(c)(1), controls, and the indictment herein was filed prior to the expiration of the limitations periods with respect to all of the counts. In essence, the parties' dispute centers on (1) what constitutes a "final action," and (2) when, if ever, this standard was satisfied in this case.

However, noting that it appeared that the statute of limitations had expired with respect to several counts before the United States government filed its second application to suspend the limitations period on August 30, 2007, the Court directed the parties to brief a question that has divided some of the courts throughout the nation; namely, assuming that an official request by the United States government was made within the limitations period, whether it may apply for, and a court may grant, a suspension of the limitations period under § 3292 after the statute of limitations has already expired. This issue has been fully briefed and is now ripe for resolution by the Court.

II.

Before turning to the issue raised in the order for supplemental briefing, the Court must first address an additional question that arose in the course of this briefing. The Court previously noted that the United States government did not dispute the claim by Csolkovits that the Bahamian government took "final action" on the first official request on February 1, 2007. However, the United States government now asserts that February 1st "may very well have not been the date of final action on our initial request." (Gov't's Supp. Br. at 9 n.3). In furtherance of this argument, it states that it may have received additional documents which were responsive to its initial request after February 1st, but it is unable to identify when, if ever, that occurred. In light of the fact that the United States government cannot specify any later date on or around which additional documents were received, the Court will assume that final action occurred on February 1, 2007.

4

This assumption is supported by the declaration of Ross MacKenzie (the Assistant United States Attorney assigned to this case), which was proffered in support of the United States government's second application to suspend the running of the limitations period. In his declaration, MacKenzie stated that responses and documents were received from the Bahamian authorities on November 23 and 29, 2006; January 9, 2007; and February 1, 2007. (MacKenzie Decl. ¶ 10, Copy at Ex. G to Def.'s Mot. to Dismiss Counts 1-5 and 12). Thus, it appears that - at least as of the date of this declaration (August 30, 2007) - the United States government did not receive any documents after February 1, 2007, in response to its initial request.

An analysis of § 3292 by the Court begins, as it must, with its text. "[A] fundamental canon of statutory construction is that when interpreting statutes, the language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Douglas*, 634 F.3d 852, 858 (6th Cir. 2011) (citation and internal quotation marks omitted). "Unless they are otherwise defined, the words in a statute will be interpreted as taking their ordinary, contemporary, common meaning." *Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460, 462 (6th Cir. 2010) (citation and internal quotation marks omitted). The statute must be interpreted based "upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis," *Dolan v. Postal Service*, 546 U.S. 481, 486 (2006), and should be read so as "to give effect, if possible, to every clause and word of [it]," *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citation and internal quotation marks omitted). "If the statutory language is unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced." *Id.* at 463 (citation and internal quotation marks omitted). Finally, inasmuch as criminal statutes of limitation are

5

"designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to . . . encourag[e] law enforcement officials promptly to investigate suspected criminal activity . . . , [they] are to be liberally interpreted in favor of repose."*Toussie v. United States*, 397 U.S. 112, 115 (1970) (citation and internal quotation marks omitted).

This statute provides in relevant part that, "[u]pon application of the United States [government], filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court . . . shall suspend the running of the statute of limitations for the offense . . . ." 18 U.S.C. § 3292(a)(1). The Second Circuit has held that the plain language of this provision compels the conclusion that the statute of limitations can only be suspended if it is, at the time of the suspension, still running:

> "[T]o suspend" is to cause to stop, at least for a time, something that is otherwise in operation or effect. And a statute of limitations is only in operation or effect if it is running. It is equally obvious . . . that a statute of limitations cannot be "running" if it has already "run," i.e., if it has expired at the end of the prescribed period. It follows that a district court can "suspend the running of [a] statute of limitations," 18 U.S.C. § 3292(a)(1), only if the limitations period has not yet expired. To restart the running of an expired statute of limitations would be to "revive" it. We see no basis upon which to read the word "suspend" in section 3292 to include the distinct concept of revival.

*United States v. Kozeny*, 541 F.3d 166, 172 (2d Cir. 2008); *see also United States v. Brody*, 621 F. Supp. 2d 1196, 1201 (D. Utah 2009) ("[T]he court concludes that as a matter of plain meaning, § 3292 requires that an application to suspend be made before the original statute of limitations has expired. The court sees this interpretation as the only way to make sense of and give effect to [the] phrase that '[u]pon application . . . the district court . . . shall suspend the running of the statute of limitations.' The statute does not give authority to the court 'to revive' the statute once it has run.

Had that been the intent, Congress could have clearly indicated it with words that would allow that interpretation.").

The United States government argues that the only timing requirements imposed by § 3292 are that (1) the application must be filed before the return of the indictment, § 3292(a)(1), and (2) the Court must rule on the application within thirty days, § 3292(a)(2). It also notes that, under § 3292(b), the period of suspension begins on the date of the official request rather than on the date of the application or subsequent court order. Thus, it contends, only the official request - and not the application and order - must be submitted prior to the running of the statute of limitations. These arguments have been endorsed by the Ninth and Third Circuits. *See United States v. Jenkins*, 633 F.3d 788, 799 (9th Cir. 2011) ("Under [*United States v. Bischel*, 61 F.3d 1429 (9th Cir. 1995)], the only temporal requirements of a § 3292 application are (1) that the official request for evidence in a foreign country be made before the statute of limitations expires and (2) that the application for suspension be submitted to the district court before the indictment is filed."); *United States v. Hoffecker*, 530 F.3d 137, 163 n.4 (3d Cir. 2008) ("Though we do not decide the case on this basis, Judge Greenberg and Judge Roth point out that under section 3292 there is no express requirement that the application to suspend the statute of limitations must be made before the statute has run. . . . [A]s a matter of statutory construction there is no reason why a case seemingly barred by the statute of limitations cannot be revived by a section 3292 application made before the Government has received all of the requested foreign evidence."); *see also United States v. Neill*, 940 F. Supp. 332 (D.D.C.), *vacated on other grounds*, 952 F. Supp. 831 (D.D.C.1996) ("The defendants argue that the government's application . . . was untimely - it was made after the statutes of limitations had expired, and, according to the defendants, 18 U.S.C. § 3292 cannot revive an expired statute

of limitations. However, contrary to the defendants' argument, the statutes of limitations were tolled by the official request to a foreign government, not by the [United States] government's application to the Court.").

It seems obvious to the Court that the "running" of a limitations period that has already run cannot be suspended. *See* § 3292(a)(1). Thus, in order for the United States government to prevail, it must be the official request - not the application or order - that effects the suspension. The United States government submits that this is so, and that the subsequent court order "merely validate[s]" the suspension. However, this interpretation is inconsistent with the plain language of the statute, which provides that the district court - *not* the United States government - "shall suspend the running of the statute of limitations." § 3292(a)(1). If Congress had intended that the submission of an official request operated to suspend the limitations period, it could have utilized appropriate language which would have reflected this intent. *See Brody*, 621 F. Supp. 2d at 1201 ("This reading is bolstered by the language of § 3292(b), which speaks of the 'period of suspension.' If that subsection contained language such as 'the official request shall suspend the running of the statute of limitations,' the court would have a different view of this question."). Likewise, if Congress had intended that the role of the courts would be simply to validate or reaffirm that which the official request had already accomplished, it could have said so. This it did not do.

This interpretation is consistent with - and does not render superfluous - the statutory language which provides that the period of suspension begins on the date on which the official request is made. The Ninth Circuit has held that this provision "plainly contemplates that the starting point for tolling the limitations period is the official request for evidence, not the date the

8

§ 3292 motion is made or granted." *Bischel*, 61 F.3d at 1435.[2] However, the fact that the tolling period is made effective as of the date of the official request does not mean that the official request - of its own force - suspends the limitations period. *See Kozeny*, 541 F.3d at 174 ("The fact that the statute requires a retroactive starting date for the suspension period does not speak to whether applications for a suspension must be filed before the statute of limitations has otherwise run."). On the contrary, § 3292(a)(1) and § 3292(b), when read together, provide that a court may issue an order which suspends the running of the statute of limitations - so long as it *is* still running - and, if it issues such an order, the suspension is made retroactive to the date of the official request. *See Kozeny*, 541 F.3d at 174 ("We find nothing inconsistent about section 3292 requiring that applications to suspend the statute of limitations be filed before the statute of limitations has expired and also requiring that the starting date of the suspension period be backdated to the day on which the request for foreign evidence was made. We therefore consider the language of subsection 3292(b), which requires the court to start the suspension period retroactively on the date the evidence was requested, together with subsection 3292(a), which, as we have said, contemplates

---

[2]The Court recognizes that, arguably, *Bischel* is not on point, insofar as it "never explicitly states that the [United States] government may apply for a section 3292 order after the statute of limitations would otherwise have expired." *United States v. Daniels*, No. 09-00862, 2010 WL 2680649, at *5 (N.D. Cal. July 6, 2010). In *Daniels*, the district court ultimately rejected the defendant's argument that "*Bischel* was only concerned with how many days the suspension order lasted, and not whether the suspension order could be entered after the statute of limitations would otherwise have expired," *id.*, and reluctantly concluded that the court order could be entered after the expiration of the limitations period, *id.* at *4 ("Were this court writing on a blank slate, it might well [] adopt *Kozeny*'s approach and dismiss [certain] counts . . . as time-barred. Such is not, however, the case."). Moreover, the Ninth Circuit has recently affirmed that *Bischel* does speak to this precise issue. *See Jenkins*, 633 F.3d at 799 ("Appellants argue that § 3292 does not authorize a district court to 'revive' an already expired statute of limitations, regardless of whether the government makes its official request for evidence from the foreign country before the statute expires. Our ruling in *Bischel* . . . forecloses appellants' argument.").

9

that a statute of limitations be 'running' at the time an application for suspension is filed. We will not adopt a statutory interpretation that would render superfluous the timing provision of subsection 3292(a) when it can be read consistently with the retroactive start date requirement of subsection 3292(b)."); *Brody*, 621 F. Supp. 2d at 1201 ("Read as a whole . . . , there is little doubt that § 3292 gives the *district court* the power to suspend the running of the statute of limitations. Rather than § 3292(b) serving as a self-executing trigger, then, it is meant to define the starting and ending points for the court-ordered suspension period.").

In *Kozeny*, the Second Circuit recognized - but found it unnecessary to rule upon - the question of whether a court order must be entered within the limitations period or whether it was sufficient that the application was filed on or before that time. 541 F.3d at 173 n.8. However, the foregoing analysis demonstrates that the former interpretation is correct: "[This] logic would seem to require that the order must also be issued before the statutory period expires, since it is the court's order and not the application which 'suspend[s]' the 'running' of the statute." *Daniels*, 2010 WL 2680649, at *4 n.5. This interpretation also makes sense of the requirement that a court must act upon an application within a period of thirty days. This deadline establishes a date certain by which the United States government must file an application to be assured that the limitations period will not expire before the court enters its order.

Finally, as explained in *Kozeny*, 541 F.3d at 175, this interpretation does not render superfluous the provision that requires the application to be filed before the return of the indictment. Section 3292 was enacted as a part of the Comprehensive Crime Control Act of 1984 ("CCCA"), Pub. L. No. 980473, tit. II, 98 Stat. 1837 (1984). The CCCA also added a new provision, 18 U.S.C. § 3161(h)(9), to the Speedy Trial Act. Under this newly-added provision, the

10

United States government, after the filing of the indictment, may exclude time from the indictment-to-trial speedy trial clock if "an official request [for evidence in a foreign country], as defined in section 3292 of this title, has been made . . . ." It follows, then, that:

> [W]hen section 3292 is read alongside the CCCA's complementary amendment to the Speedy Trial Act, the significance of section 3292's phrase "before return of an indictment" is clear. If the government anticipates a delay because of a request for foreign evidence *before* indictment, it can seek to suspend the statute of limitations pursuant to section 3292. If it anticipates such a delay *after* the indictment is returned, but before trial, it can separately apply for relief under section 3161(h)(9) of the Speedy Trial Act. In other words, indictment serves as the dividing line between when the government can turn to section 3292 and when, instead, it must turn to section 3161(h)(9).

*Kozeny*, 541 F.3d at 175.

The Court notes that this conclusion does not undermine the congressional intent to "facilitate the prosecution of these criminal acts [the use of offshore banks to launder proceeds from criminal activity] by affording prosecutors enough time to obtain evidence located in foreign countries." *United States v. Torres*, 318 F.3d 1058, 1062 (11th Cir. 2003) (citing H.R. Rep. No. 98-907, at 2-4 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3578, 3578-79). Requiring the United States government to apply for a suspension order prior to the expiration of the statute of limitations does not deprive it of any readily-apparent strategic or investigatory tools. Assuming that its official request is made within the limitations period, it is entirely within the power of the United States government to file its application before the expiration of the statute of limitations. With recognition that the application may be submitted *ex parte*, *United States v. Bohn*, 281 F. App'x 430, 434 (6th Cir. 2008) (unpublished), the Court cannot conceive of any legitimate reason to delay

11

an application for the suspension order.[3] The Government has not provided the Court with any explanation for the five-month delay between its official request and subsequent application. Indeed, as noted in *Kozeny*, 541 F.3d at 175 n.11 ("Our interpretation of section 3292 is also consistent with internal Justice Department guidelines. A manual advises federal prosecutors: 'Make sure you file [the section 3292 application] before the statute runs; don't wait until the foreign country responds to the request.'" Executive Office for United States Attorneys, Evidence for Experienced Criminal Litigators E–18 (1993)."), the Government's own procedures call for it to file the application prior to the expiration of the statute of limitations.[4]

### III.

For the reasons that have been set forth above, the Court grants Csolkovits' motion to

---

[3]It is possible that, in some circumstances, the Government may need some amount of time between the submission of the official request and the filing of the application to the Court in order to gather sufficient evidence to meet its burden of establishing "by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." 18 U.S.C. § 3292(a)(1). However, this scenario would seemingly only become problematic if the Government had not submitted its official request until shortly before the expiration of the untolled statute of limitations. Moreover, the evidentiary burden is not high. *United States v. Trainor*, 376 F.3d 1325, 1332-33 (11th Cir. 2004) ("Our reading of the § 3292 preponderance of the evidence requirement is quite broad and the Government may satisfy its burden by including a sworn or verified application containing the necessary factual information, testimony by Government officials, affidavits, declarations, exhibits, or other materials of evidentiary value. Indeed . . . , the Government's evidence could even include hearsay evidence. Although this is not a high standard of proof, neither is it a toothless standard. Accordingly, any evidentiary submission must meet a minimum threshold of reliability." (citations and internal quotation marks omitted)).

[4]As noted by *Daniels*, 2010 WL 2680649, at *4 n.6, this directive does not necessarily mean that the United States government interprets § 3292 to require the application to be filed before the expiration of the limitations period because, in light of the conflict in authority, "it is natural that the Department [of Justice] has erred on the safe side and instructed all of its attorneys to do so."

dismiss certain counts of the indictment as barred by the statute of limitations. (ECF No. 53). The parties and the Court agree that, under this interpretation of § 3292, Counts I-VI and XII are time-barred. Thus, these counts are dismissed. In light of the disposition of this motion, Csolkovits' separate motion to dismiss Count XII for failure to allege a criminal offense (ECF No. 52) is denied for mootness.

    IT IS SO ORDERED.

Date: February 7, 2012           s/Julian Abele Cook, Jr.
         JULIAN ABELE COOK, JR.
         U.S. District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 7, 2012.

         s/ Kay Doaks
         Case Manager